IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KUKUI GARDENS CORPORATION, | ) | |
| | ) | Civ. No. 08-00049 ACK-KSC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HOLCO CAPITAL GROUP, INC., HC | ) | |
| MORTGAGE COMPANY, INC., and | ) | |
| KEVIN C. HORTON, individually, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ORDER AFFIRMING THE MAGISTRATE JUDGE'S ORDER DENYING
APPLICANT'S MOTION TO INTERVENE

Applicant Travelers Casualty and Surety Company
("Travelers") appeals to this Court from an order issued by
Magistrate Judge Kevin S.C. Chang that denied Travelers' Motion
to Intervene in this matter.  The Court finds that the Magistrate
Judge's order was not clearly erroneous or contrary to law.
Accordingly, the order denying Travelers' Motion to Intervene is
affirmed.

PROCEDURAL BACKGROUND

On May 23, 2008, Plaintiff Kukui Gardens Corporation
("Plaintiff") filed in this Court a First Amended Complaint
("Complaint") against Defendants Holco Capital Group, Inc.
("Holco"), HC Mortgage Company, Inc. ("HC Mortgage"), and Kevin
C. Horton ("Horton") (collectively, "Defendants"), alleging

1

claims of failure to properly release a mortgage pursuant to Hawaii Revised Statutes ("H.R.S.") § 506-8 ("Count I"), wrongful conversion of Plaintiff's property ("Count II"), fraud ("Count III"), breach of fiduciary duties ("Count IV"), violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. ("Count V"), malicious, wanton, and intentional actions ("Count VI"), and offset of monies due and owing ("Count VII"). See Complaint at ¶¶ 68-112.

On January 12, 2009, Defendants filed an Answer and Counterclaim ("Defs. Ans."), asserting an unjust enrichment claim against Plaintiff. Defs. Ans. at 8-11. On February 2, 2009, Plaintiff filed an Answer to Defendants' Counterclaim ("Pl. Ans.").

On May 27, 2009, Travelers filed a Motion to Intervene as Plaintiff ("Motion") in this action. Plaintiff and Defendants filed oppositions to the Motion. On June 30, 2009, a hearing on the Motion was held before Magistrate Judge Kevin S.C. Chang.

On July 6, 2009, the Magistrate Judge issued an Order Denying Travelers' Motion to Intervene as Plaintiff ("Order"). On July 20, 2009, and pursuant to Local Rule 74.1, Travelers filed a Notice of Appeal ("Notice of Appeal"), which appealed to this Court the Order Denying the Motion to Intervene. Plaintiff filed a response to the Notice of Appeal on August 3, 2009 ("Pl. Resp."). On the same day, Defendants also filed a Response to

the Notice of Appeal ("Defs. Resp."). The Court finds this
matter suitable for disposition without a hearing. See L.R.
7.2(d); L.R. 74.1.

## FACTUAL BACKGROUND[1/]

In 1970, in order to build a multi-unit low and
moderate income apartment complex in Honolulu, Hawai'i (the
"Property"), Plaintiff obtained a $16 million loan, evidenced by
a secured note ("Note") that was endorsed and insured by the
United States Department of Housing and Urban Development
("HUD"). Complaint ¶¶ 19-20. The Note was secured by a mortgage
("Mortgage") recorded in both the State of Hawai'i Bureau of
Conveyances and the Land Court. Id. ¶ 21.

As a requirement for obtaining the loan, Plaintiff
became subject to a regulatory agreement ("Regulatory Agreement")
with HUD that required Plaintiff to establish two accounts to be
maintained by the mortgagee ("Reserve Funds"). Id. ¶¶ 26-28.

---

[1/] The facts as recited in this Order are for the purpose of
disposing of this appeal and are not to be construed as findings
of fact that the parties may rely on in future proceedings in
this case.
   A detailed discussion of the factual history of the instant
dispute (up to that point) is also set out in a previous Order
dated December 19, 2008. See Order Denying Defendant Horton's
Motion to Dismiss for Lack of Personal Jurisdiction; Denying
Defendant Horton's Motion to Dismiss for Insufficient Service of
Process; Denying Defendant Horton's Motion to Dismiss for
Improper Venue, or in the Alternative, Transfer ("Order on
Motions to Dismiss"), Civ. No. 07-00342, Docket #52 (D. Haw. Dec.
19, 2008).

In 1986, HC Mortgage purchased the Mortgage through a HUD auction and at some point prior to the dissolution of HC Mortgage, the Mortgage was transferred to Holco.  Id. ¶¶ 22-23. At all relevant times, Kevin Horton was the President of both HC Mortgage and Holco.  Id. ¶ 8.  After acquiring the Mortgage and Note, HC Mortgage entered into an Amended and Restated Trust and Servicing Agreement ("Trust Agreement") with the National Bank of Detroit ("NBD").  See Trust Agreement, attached to the Notice of Appeal as Ex. 3-1.  Pursuant to the Trust Agreement, NBD served as the Mortgage Trustee and HC Mortgage functioned as the Mortgage Servicer.  Id. at 2-3.  The Trust Agreement created a beneficial interest in the form of a certificate, and required that NBD distribute "to the person in whose name this Certificate is registered," on a monthly basis, its interest in the principal and interest payments collected under the Mortgage and Note.  See id. at 3; Notice of Appeal Ex. 3 ("Travelers' Complaint") ¶ 21. It was HC Mortgage's responsibility, as Mortgage Servicer, to collect the payments due on the Note and remit them to NBD.

Initially, HC Mortgage, along with functioning as the Mortgage Servicer, was also the Certificate holder.  Travelers' Complaint ¶ 24.  However, in 1993, a Project Loan Certificate was executed that transferred a 100% beneficial interest in the Mortgage and the Note to a certain Cudd & Company.  Notice of Appeal Ex. 3-2 ("Project Loan Certificate") at 1.  Under the

4

Project Loan Certificate, both NBD and HC Mortgage retained their Trust Agreement responsibilities as Mortgage Trustee and Mortgage Servicer respectively.  Id. at 1-2.

In 1998, Holco assumed HC Mortgage's responsibilities as Mortgage Servicer.  Defs. Ans. at 3.  Defendants also represent that Holco became the holding mortgagee in 2006.  Id.

On May 27, 2009, Cudd & Company and Travelers executed an Assignment of Claims ("Assignment") by which Cudd & Company assigned any and all claims to Travelers that Cudd & Company had or has under the Project Loan Certificate and Trust Agreement. Assignment ¶ H, attached as Ex. E to Travelers' Reply to the Motion to Intervene.  The Assignment asserts that "Cudd & Co. held Project Loan Certificate #K-6 for the benefit of Travelers" and thus, "Travelers was, and continues to be, the beneficial owner of the interest in the Project Loan Certificate." Id. ¶ F. However, the Assignment also notes that "Cudd & Co. remains as the Certificate holder of the Project Loan Certificate." Id. ¶ 5.  Finally, the Assignment alleges that "[t]he Servicer and the Mortgage Trustee are in breach of their obligations under the Trust and Servicing Agreement and the Project Loan Certificate #K-6 for their failure to make payments thereunder." Id. ¶ G.

The dispute between Plaintiff and Defendants arose in 2006 and 2007, when Plaintiff entered into a purchase and sale agreement for the sale of the Property.  Complaint ¶ 31.  In

5

order to effectuate the sale, Plaintiff sought to prepay the remaining amount on the Note and receive a release of the Mortgage in return.  However, in order to prepay the remaining amount on the note, Plaintiff was required to obtain authorization from HUD.  Id. ¶ 32.  Therefore, in late 2006, Plaintiff submitted a Notice of Request for Prepayment to Holco, which in turn submitted the early termination request to HUD. Id. ¶¶ 34-35.  On December 7, 2007, HUD informed Plaintiff of its consent to prepayment of the loan.  Id. ¶ 37.

Upon HUD approval, Plaintiff expected that Holco would release the Mortgage in order to clear title for the sale.  Id. ¶ 40.  However, Horton, on behalf of Holco, sent an e-mail to Plaintiff's attorney, requesting over $4 million from the Reserve Funds for allegedly unpaid services and contractual obligations, in exchange for the release of the Mortgage.  Id. ¶ 43.

Despite the inability to initially obtain a release of the Mortgage, the sale of the Property closed on December 18, 2007, when Plaintiff arranged with First American Title Company ("FATCO") to place $1.8 million in escrow to cover the balance of the Mortgage,[2/] as well as another $1.8 million as indemnity for FATCO.  Travelers' Complaint ¶¶ 16-17; Complaint ¶ 55.

---

[2/] In fact, Plaintiff's estimate of the amount due on the loan is closer to $1.6 million.  Complaint ¶ 56.

Eventually, in January of 2008, Horton sent a letter to FATCO, stating that "the mortgage is paid in full," and including a release of mortgage ("Release), but also stating that Holco was retaining funds until a resolution with Plaintiff could be met. Plaintiff's Opposition to the Motion to Intervene Ex. H; <u>see</u> Defs. Ans. at 5 ("Holco has provided a Release of Mortgage to plaintiff, does not contest that the mortgage was paid in full, and has credited plaintiff for a final mortgage payment of $1,800,000."). On September 22, 2008, Horton also sent the cancelled Note to FATCO, which was memorialized by marking the face of the Note "PAID IN FULL" and signed by Horton.[3/] Plaintiff's Opposition to the Motion to Intervene Ex. I.

Travelers contends that it is entitled to the outstanding principal and interest on the Note, and asserts that this amount should be awarded from the amount held in escrow by FATCO. Travelers' Complaint at 12-13. Thus, Travelers asserts that it may intervene in the instant matter, either as of right, or alternatively, by permission of the Court. Notice of Appeal at 1.

---

[3/] The parties have not yet been able to record the Release in the Hawai'i Land Court because NBD, not Holco, is the last record assignee of the Mortgage. Pl. Resp. at 11 n.2; Notice of Appeal at 14.

**STANDARD**

Pursuant to Local Rule 74.1, any party may appeal from a magistrate judge's order determining a non-dispositive pretrial matter or, if a reconsideration order has issued, the magistrate judge's reconsideration order on such a matter.  The district judge shall consider the appeal and shall set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.  See L.R. 74.1; see also 28 U.S.C. § 626(b)(1)(A); Fed. R. Civ. P. 72(a).  The district judge may also reconsider sua sponte any matter determined by a magistrate judge.  See L.R. 74.1.

"The clearly erroneous standard applies to the magistrate judge's factual findings while the contrary to law standard applies to the magistrate judge's legal conclusions, which are reviewed de novo."  Columbia Pictures, Inc. v. Bunnell, 245 F.R.D. 443, 446 (C.D. Cal. 2007).

Under the "clearly erroneous" standard, the magistrate judge's ruling must be accepted unless, after reviewing the entire record, this Court is "left with the definite and firm conviction that a mistake has been committed."  United States v. Silverman, 861 F.2d 571, 576-77 (9th Cir. 1998) (citing United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).  The district judge may not simply substitute his or her judgment for

8

that of the magistrate judge.   <u>See</u> <u>Grimes v. City & County of San Francisco</u>, 951 F.2d 236, 241 (9th Cir. 1991).

"'A decision is contrary to law if it applies an incorrect legal standard or fails to consider an element of the applicable standard.'"   <u>Na Pali Haweo Community Ass'n v. Grande</u>, 252 F.R.D. 672, 674 (D. Haw. 2008).

**<u>DISCUSSION</u>**

An outsider may become a party to a lawsuit through the procedure of intervention that is provided for by Fed. R. Civ. P. 24 ("Rule 24").   Rule 24 distinguishes between two types of intervention:   intervention of right and permissive intervention. Rule 24 provides, in relevant part:

> (a)   <u>Intervention of Right</u>.  On timely motion, the court must permit anyone to intervene who:
> (1)   is given an unconditional right to intervene by a federal statute; or
> (2)   claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
> (b)   <u>Permissive Intervention</u>.
> (1)   <u>In General</u>.  On timely motion, the court may permit anyone to intervene who:
> (A)   is given a conditional right to intervene by a federal statute; or
> (B)   has a claim or defense that shares with the main action a common question of law or fact.
> (2)   . . . .
> (3)   <u>Delay or Prejudice</u>.   In exercising its discretion, the court must consider whether the intervention will unduly delay or

9

> prejudice the adjudication of the original
> parties' rights.

Fed. R. Civ. P. 24.  Travelers contends that it may intervene in this action as of right pursuant to Rule 24(a), or in the alternative, that the Court should permit Travelers to intervene as a discretionary matter pursuant to Rule 24(b).  The Court will address each basis for intervention in turn.

## I.   Travelers May Not Intervene as of Right.

Travelers does not contend that it has a right to intervene pursuant to a federal statute.  Thus, Rule 24(a)(1) is inapplicable here and Travelers may only intervene as of right, if at all, pursuant to Rule 24(a)(2).

Intervention as of right is appropriate only where a party satisfies <u>all</u> of the following requirements:

> (1) the applicant must timely move to intervene; (2) the
> applicant must have a significantly protectable interest
> relating to the property or transaction that is the
> subject of the action; (3) the applicant must be situated
> such that the disposition of the action may impair or
> impede the party's ability to protect that interest; and
> (4) the applicant's interest must not be adequately
> represented by existing parties.

<u>Arakaki v. Cayetano</u>, 324 F.3d 1078, 1083 (9th Cir. 2003). In reaching a decision that Travelers is not entitled to intervene as a matter of right, the Magistrate Judge analyzed the first two requirements and found that neither requirement was satisfied, i.e., that the Motion was untimely and that Travelers did not have a significantly protectable interest in the

10

litigation.  Order at 8, 10.  Thus, the Magistrate Judge found it unnecessary to address the final two requirements and denied Travelers' Motion to intervene as of right.  Id. at 10.  The Court will also review only the first two requirements of intervention as of right.

### A.   The Determination that Travelers' Motion is Untimely is Not Clearly Erroneous or Contrary to Law.

"Timeliness is 'the threshold requirement' for intervention as of right."  League of United Latin Am. Citizens v. Wilson, 131 F.3d 1297, 1302 (9th Cir. 1997) (quoting United States v. Oregon, 913 F.2d 576, 588 (9th Cir. 1990)).  "In other words, if [the court] finds 'that the motion to intervene was not timely, [the court] need not reach any of the remaining elements of Rule 24.'"  Id. (quoting United States v. Washington, 86 F.3d 1499, 1503 (9th Cir. 1996)).

The Magistrate Judge found that Travelers' Motion was untimely because of the over one-year delay in filing the Motion and the activity in the case over that period, the potential prejudice to the parties if Travelers were allowed to intervene at that point, and the lack of any reason from Travelers for not seeking to intervene sooner.  Order at 7-8.  On appeal, Travelers contends that these findings were erroneous.  The Court disagrees with Travelers and affirms the Magistrate Judge's determination that the Motion was untimely.

"'[A]ll the circumstances of a case must be considered in ascertaining whether or not a motion to intervene is timely under Fed. R. Civ. P. 24.'" <u>Day v. Apoliona</u>, 505 F.3d 963, 966 (9th Cir. 2007) (quoting <u>Legal Aid Soc'y of Alameda County v. Dunlop</u>, 618 F.2d 48, 50 (9th Cir. 1980)).  Specifically, the Court must consider the following three factors:  "'(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.'"  <u>League of United Am. Citizens</u>, 131 F.3d at 1302 (quoting <u>County of Orange v. Air California</u>, 799 F.2d 535, 537 (9th Cir. 1986)).

"In considering these factors, however, [the court] must bear in mind that 'any substantial lapse of time weighs heavily against intervention.'"  <u>Id.</u> (quoting <u>Washington</u>, 86 F.3d at 1503).  Here, Travelers did not file its Motion until over 16 months after Plaintiff filed its original complaint, and just over one year after Plaintiff filed its amended complaint.[4/]  The Court considers the above factors in terms of Travelers' Motion.

---

[4/] Because of difficulty in locating the Defendants, Plaintiff was unable to serve the Complaint until June of 2008 (though many earlier attempts were made) by publication in the South Bend Tribune and in the Honolulu Advertiser.  <u>See</u> Submission of Affidavit of Publication of Summons for the South Bend Tribune, CV 08-00049 ACK-KSC, Docket #21, (July 1, 2008); Affidavit of Publication in the Honolulu Advertiser, CV 08-00049 ACK-KSC, Docket #23 (July 2, 2008).  Regardless, it was still nearly a year between the service by publication and Travelers' filing of the Motion to Intervene.

### (1)  The Stage of the Proceeding

As to the relationship between the timeliness of the Motion and the stage of the proceeding, "the timeliness inquiry demands a . . . nuanced, pragmatic approach."  League of United Am. Citizens, 131 F.3d at 1303.  Travelers asserts that there has been little activity in the case to this point.  Regarding this question, the Magistrate Judge found that "while this case is not at such an advanced stage so as to automatically preclude intervention, significantly more activity has occurred than Travelers would have one believe."  Order at 7.

This finding is not clearly erroneous or contrary to law because the Magistrate Judge appropriately based his finding on what had already occurred in the case up to the filing of the Motion.  See League of United Am. Citizens, 131 F.3d at 1303 (holding that "[the applicant's] emphasis on the pre-trial nature of the proceedings – that is, its focus on what had not yet occurred prior to its . . . motion [to intervene] – ignores what had already occurred by that time" (emphasis in original)).  Prior to the filing of Travelers' Motion, inter alia, the parties litigated (and the Court ruled on) three motions to dismiss filed by Defendants, the parties held their Rule 16 Scheduling Conference, Defendants filed their Answer and Counterclaim, and Plaintiff filed its Answer.

13

The Court notes that there is no threshold amount of litigation activity required to make a motion to intervene untimely.  Instead, "the fact that the district court has substantively – and substantially – engaged the issues in th[e] case weighs heavily against allowing intervention as of right under Rule 24(a)(2)."  Id.  Here, it was not clearly erroneous for the Magistrate Judge to determine that there had been a substantial amount of litigation to weigh against intervention at this stage in the proceeding.  Further, the Magistrate Judge applied the correct legal standard in reaching that determination.

### (2)   The Prejudice to Other Parties

As to this factor, the Magistrate Judge noted that given the scheduled trial date in early January of 2010, "[t]he addition of Travelers to this action would likely cause some delays."  Order at 7.  However, the Magistrate Judge apparently found this factor to be neutral as he noted that he could not say whether or not the parties would suffer prejudice.  Travelers contends that no prejudice would result from intervention.  Notice of Appeal at 23.  "In evaluating prejudice, courts are concerned when 'relief from long-standing inequities is delayed.'"  United States v. Alisal Water Corp., 470 F.3d 915, 922 (9th Cir. 2004) (quoting Alaniz v. Tillie Lewis Foods, 572 F.2d 657, 659 (9th Cir. 1978)).  However, "additional delay is

14

not alone decisive." <u>League of United Am. Citizens</u>, 131 F.3d at 1304.

Thus, it was not clearly erroneous or contrary to law for the Magistrate Judge to find that the potential delay in the trial and other deadlines at least made this factor neutral in the timeliness determination. Further the Court notes that allowing Travelers to intervene could also prejudice the parties in that it would surely introduce new issues with regard to Travelers' contractual relationship with Defendants that could potentially prolong the litigation.[5/] <u>See</u> <u>Washington</u>, 86 F.3d at 1504 (holding that the district court did not abuse its discretion in finding prejudice to the parties where "intervention would complicate the issues and prolong the litigation").

### (3)  The Reason for and Length of the Delay

The final factor of timeliness requires the applicant to explain its reasons for not intervening at an earlier point in the litigation. "While the length of time that has passed since

---

[5/] Travelers' intervention would certainly introduce new issues given that the parties have narrowed the amount in dispute by excluding the funds in escrow and only arguing over the balance of the Reserve Funds after Holco withdrew the amount needed as a credit to pay off the Note and Mortgage. <u>See</u> Pl. Resp. at 29. Allowing Travelers into the litigation would introduce new issues over the relationship between Defendants, Travelers, Cudd & Company, and NBD. Plaintiff also asserts that allowing intervention would force Plaintiff to assert claims against FATCO for the escrow funds. <u>Id.</u> at 29-30.

a suit was filed is not, in and of itself, determinative of timeliness, '[a] party seeking to intervene must act as soon as he knows <u>or has reason to know</u> that his interests might be adversely affected by the outcome.'" <u>Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.</u>, 309 F.3d 1113, 1120 (9th Cir. 2002) (quoting <u>United States v. Oregon</u>, 913 F.2d 576, 589 (9th Cir. 1990)).  An applicant who knows that its interests might be adversely affected, but does not intervene immediately, risks losing the opportunity to intervene at all. <u>See id.</u> (holding that "[the applicant] should have known that the risks of waiting included possible denial of their motions to intervene as untimely"); <u>see also</u> <u>Alisal Water Corp.</u>, 370 F.3d at 923-24 ("An applicant's desire to save costs by waiting to intervene until a late stage in litigation is not a valid justification for delay.").

        The Magistrate Judge found that Travelers did not offer a sufficient reason to explain its delay in seeking intervention. Order at 7-8.  Both on appeal and before the Magistrate Judge, Travelers argues that even if there was a delay, there is no prejudice caused by the delay.  Notice of Appeal at 24.  However, regardless of prejudice (which the Court has addressed in analyzing the previous factor), "any substantial lapse of time weighs heavily against intervention."  <u>Washington</u>, 86 F.3d at 1503.

Travelers contends that the delay, at most, was a period of four and one-half months, covering the period from when Defendants filed their Answer and Counterclaim to when the Motion to Intervene was filed. Notice of Appeal at 24. However, "[d]elay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties, not the date it learned of the litigation." Washington, 86 F.3d at 1503.

As the Magistrate Judge pointed out, Travelers does not contend that it did not know of this dispute (and the case's potential impact on Travelers' interests) much earlier on. Order at 8. Instead, Travelers simply argues again that "intervention would not adversely affect the prosecution of the matter." Notice of Appeal at 24. Therefore, without a reason to explain its delay, it was not clearly erroneous or contrary to law for the Magistrate Judge to find that this factor weighed heavily against intervention as of right. See League of United Am. Citizens, 131 F.3d at 1304 (finding that more than the delay itself, intervention was inappropriate because of "[the applicant's] failure adequately to explain – either in its original motion to the district court, in its opening or reply briefs to this court, or at oral argument – the reason for delay").

17

### (4)   Summary of Timeliness Factors

The first and third factor of timeliness weigh against Travelers' intervention as of right.  The second factor, at best, is neutral and may also weigh against intervention.  The Magistrate Judge applied the correct legal standard in analyzing these timeliness factors and under this standard, it was not clearly erroneous to find that such factors weighed against intervention as of right.  On this basis alone, the Magistrate Judge could have found that intervention as of right was inappropriate without addressing any of the other three factors. See Washington, 86 F.3d at 1503 ("If the court finds that the motion to intervene was not timely, it need not reach any of the remaining elements of Rule 24.").  However, the Magistrate Judge also based his decision on the second consideration for intervention as of right and so the Court will address this consideration as well.

**B.    The Determination that Travelers Lacks a Significantly Protectable Interest is Not Clearly Erroneous or Contrary to Law.**

After timeliness, the next consideration for determining intervention as of right examines whether the applicant has a significant protectable interest in the dispute. "An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law and (2) there is a 'relationship' between its legally

18

protected interest and the plaintiff's claims." <u>Donnelly v. Glickman</u>, 159 F.3d 405, 409 (9th Cir. 1998).  Here, the parties do not dispute that Travelers asserts a valid claim under contract law as the beneficial owner of the full interest in the Project Loan Certificate.  Thus, the issue lies solely as to whether there is any relationship between Travelers' interest and Plaintiff's claims.

"The 'interest' test is not a bright-line rule." <u>Alisal Water Corp.</u>, 370 F.3d at 919.  That said, "'[a]n applicant generally satisfies the 'relationship' requirement only if the resolution of the plaintiff's claims will affect the applicant.'" <u>Arakaki</u>, 324 F.3d at 1084 (quoting <u>Donnelly</u>, 159 F.3d at 410). In the instant matter, the only way that Plaintiff's claims would affect Travelers would be if Travelers has an interest in the money held by FATCO in escrow.  Travelers contends that its beneficial interest in the Project Loan Certificate is connected to the escrow funds.  Notice of Appeal at 13-21.  Both Plaintiff and Defendants counter that this would only be the case had the Mortgage and Note <u>not</u> been paid off, and had the Mortgage and Note <u>not</u> been released.  <u>See</u> Pl. Resp. at 21-22; Defs. Resp. at 2-3.  However, the parties further contend, the escrow funds are not a part of this dispute because Defendants have credited $1.8 million from the Reserve Funds as full payment on the Mortgage, and Defendants have provided a Release of Mortgage.  <u>Id.</u>  Finding

19

the parties' arguments persuasive, the Magistrate Judge found
that "no relationship exists between Travelers' purported
interest and the claims being litigated by Plaintiff and
Defendants."  Order at 10.  The Court agrees and finds that the
Magistrate Judge's determination to this effect was not clearly
erroneous or contrary to law.

Travelers argues that the Magistrate Judge's finding as
to no significantly protectable interest was clearly erroneous
for three reasons:  (1) despite the parties' statements to the
contrary, the Mortgage, in fact, has not been released because it
cannot be properly recorded; (2) the parties are falsely
representing that the Mortgage and Note have been paid in order
to simply block Travelers' attempt at intervention; and (3) under
the Regulatory Agreement, Defendants could not credit $1.8
million from the Reserve Funds as full payment on the Note and
Mortgage.  Notice of Appeal at 14, 16, 20.  The Court addresses
each argument in turn.

> ### (1)   The Note has been Paid and the Mortgage Released
> ### Despite any Problems with Recordation.

Travelers argues that the Magistrate Judge's finding
was clearly erroneous because the Mortgage has not been released
and the lack of a release is evidenced by the inability to record
anything in the Land Court.  Notice of Appeal at 14.  There is no
dispute that Plaintiff has been unable to record the Release of
Mortgage in the Land Court because NBD, and not Holco, is the

last assignee of record for the Mortgage in the Land Court, and because NBD has been dissolved and no longer exists, the parties are apparently limited in their ability to update the Land Court records.  Pl. Resp. Ex. G at 13, 20.

However, it is also clear that but for this recording issue, the Release of Mortgage was otherwise complete, and more importantly, the Note was paid in full, long before Travelers sought to intervene in this matter.  Despite some initial reluctance to issue a release, Defendants issued a Release of Mortgage in January of 2008 and fully intended for the Release to be recorded in the Bureau of Conveyances and the Land Court as a binding release.[6/]  See Plaintiff's Opposition to the Motion to Intervene Ex. H.  Further, in September of 2008, Defendants sent the cancelled Note to FATCO, marked "PAID IN FULL" as proof to FATCO that nothing further was owed on the Mortgage.  See Plaintiff's Opposition to the Motion to Intervene Ex. I.

Finally, both the Plaintiff and Defendants have represented both orally and in their pleadings, that the Note is paid in full and the Mortgage has been released.  See Defs. Ans. at 5 ("Holco has provided a Release of Mortgage to plaintiff, does not contest that the mortgage was paid in full, and has credited plaintiff for a final mortgage payment of $1,800,000.");

---

[6/] The Court notes that the Release of Mortgage was issued by Defendants before Plaintiff even filed its initial complaint in this action.

Defs. Resp. at 3; Pl. Resp at 22; Pl. Resp. Ex. G at 12-13.
Therefore, the Court agrees with the Magistrate Judge that the
recording issue in the Land Court is merely a technical problem,
that it will likely be shortly resolved, and that it has no
bearing on whether in fact the Note has been paid.[7]  See Order
at 10.  Thus, it was not clearly erroneous to determine that the
Note has been paid, and that as a result, Travelers has no
interest in the escrow funds.

> **(2)   The Parties are in Genuine Agreement as to the
> Payment of the Note and Release of the Mortgage.**

Travelers also asserts that the Magistrate Judge's
determination of no significantly protectable interest was
clearly erroneous because the parties contention that the Note

---

[7] Travelers makes much of a footnote in this Court's Order
disposing of Defendants' Motions to Dismiss, in which the Court
noted that if there were mortgage holders other than the
Defendants, a mere release by Defendants would be insufficient to
release the Mortgage.  See Order on Motions to Dismiss at 7 n.6.
Travelers' reliance on this statement is misguided for at least
two reasons.  First, that footnote was part of the Court's
factual background for the purposes of that order alone, which
the Court explicitly explained should not be relied on as
findings of fact in any future proceedings.  See id. at 3 n.3.
Second, the Court made this observation in light of Defendants'
comment that, at the time of the hearing on the Motions to
Dismiss, Defendants did not have definitive evidence to show that
Defendants were the sole Mortgage holder.  Travelers' Motion to
Intervene, however, along with the documentary evidence that has
accompanied it, has clarified that in fact the Defendants appear
to be the sole Mortgage holder and servicer.  See, e.g., Project
Loan Certificate at 1 (providing that the Certificate
"Evidenc[es] The 100% Beneficial Interest [on the Mortgage]").
Thus, a release by Defendants would suffice to release the
Mortgage.

has been paid and the Mortgage has been released "is based on a fiction joined in by both [Plaintiff] and Defendants solely to defeat Travelers' application for intervention." Notice of Appeal at 16.  Both parties assert that they have represented before the Court, and in their pleadings and briefing, that the Note is paid in full and the Mortgage has been released.  Defs. Resp. at 3; Pl. Resp. at 24-25.  Thus, the parties argue, they are bound to these statements outside of the context of this Motion.  Id.  The Court agrees that the evidence of, and statements regarding, the Payment of the Note and Release of Mortgage are binding on the parties and are not merely a strategic move to block Travelers' intervention.

If nothing else, Defendants' Answer, filed several months before Travelers' Motion, states unequivocally that "Holco has provided a Release of Mortgage to plaintiff, does not contest that the mortgage was paid in full, and has credited plaintiff for a final mortgage payment of $1,800,000."  Defs. Ans. at 5. This statement is a judicial admission that binds Defendants because "'under federal law, stipulations and admissions in pleadings are generally binding on the parties and the Court.'" Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988) (quoting Ferguson v. Neighborhood Hous. Serv., 780 F.2d 549, 551 (6th Cir. 1986)).  Such an admission in the pleading "'ha[s] the effect of withdrawing a fact from issue and

dispensing wholly with the need for proof of the fact.'"   Id.

(quoting In re Fordson Eng'g Corp., 25 B.R. 506, 509 (Bankr. E.D.

Mich. 1982)).   Thus, this is not a situation where Plaintiff or

Defendants could recant on the payment of the Note or Release of

the Mortgage after Travelers' Motion to Intervene has been

decided.[8/]   Moreover, this admission was made months before

Travelers was even a potential party in this action, and thus the

Court is not persuaded by Travelers' argument that the Payment of

the Note and Release of the Mortgage is just a fiction.[9/]

_____

[8/] Both Plaintiff and Defendants also represented at the
hearing on the Motion to Intervene, and in their briefing before
the Magistrate Judge and this Court on appeal, that the Note has
been paid in full and the Mortgage has been released.  Pl. Resp.
Ex. G at 12-13, 15, 19; Pl. Resp. Ex. C at 13-15; Pl. Resp. at
21-22; Defs Resp. at 2-3.  Along these lines, Plaintiff
represented to the Magistrate Judge that as a result of the
Release of Mortgage and payment of the Note, the amount in
dispute has been reduced from $4.5 million to approximately $2.7
million (the amount left in the Reserve Funds after crediting
$1.8 million) and a Partial Motion for Summary Judgment (as to
Count II for conversion) seeking judgment in the amount of $2.7
million has been filed.  Pl. Resp. Ex. G at 15; see Partial
Motion for Summary Judgment on Count II of the First Amended
Complaint, CV 08-00049 ACK-KSC, Docket #70, filed June 29, 2009.
All these statements may also rise to the level of judicial
admissions to further bind the parties and the Court.  See Am.
Title Ins. Co., 861 F.2d at 227 ("[S]tatements of fact contained
in a brief may be considered admissions of the party in the
discretion of the district court.").

[9/] The Court notes that regardless of any release, the
payment of the Note in full is sufficient to eliminate any
interest that Travelers could have in the escrow funds.  Given
that the Note has been paid in full, Defendants represented that
"[t]he parties have agreed to seek, via stipulation, a judicial
declaration that Holco is the proper party to provide [Plaintiff]
with a release of mortgage and that Holco did provide [Plaintiff]
with a release of mortgage after [Plaintiff] made final payment

Therefore, the Court finds that the canceled Note, the Release of Mortgage, and the admissions by Defendants and Plaintiff in the pleadings, briefings, and at oral argument, all support the Magistrate Judge's finding that Note has been paid in full, and the Mortgage has been released.  <u>See</u> Order at 10.

### (3) Defendants Could Credit $1.8 million from the Reserve Funds once HUD Approved the Prepayment.

Finally, Travelers contends that the Magistrate Judge's determination that the Mortgage was released is clearly erroneous because Holco's credit of $1.8 million from the Reserve Funds violated the Regulatory Agreement.  As an initial matter, the Court notes that Travelers is not a party to, or an intended beneficiary of, the Regulatory Agreement between Plaintiff and HUD.  Thus, it is doubtful that Travelers has standing to challenge potential violations of the Regulatory Agreement.

Regardless, the Court is persuaded that Holco could credit $1.8 million from the Reserve Funds because the proper approval for prepayment was received from HUD.  Upon Plaintiff's request to Holco, and Holco's subsequent request to HUD, HUD approved prepayment of the loan in December 2007.  <u>See</u> Notice of Appeal Ex. 6.  As a result, the deposit requirements of the Regulatory Agreement were suspended as of December 2007 and all

---

on the note." Defs. Resp. at 3.  In fact, such stipulated judgment (as to Count I for statutory release of mortgage) is pending approval by this Court.

remaining funds were authorized by HUD to be returned to
Plaintiff.  See id.  Just a few weeks after receiving HUD
approval, Defendants asserted in their Answer and Counterclaim
that they credited Plaintiff $1.8 million from the Reserve Funds
as full payment on the Note, and Plaintiff has allowed Defendants
to do so.  The Court finds, therefore, that the balance on the
Note could be paid, in this instance, with a portion of the
Reserve Funds.  As a result, the Mortgage could also be properly
released.

### (4)  Summary of Findings as to No Significantly Protectable Interest

As the escrow funds are only being held to cover
payment of the Note and Mortgage, Travelers' interest in the
escrow funds depends entirely on whether or not the Note has been
paid in full.  It was not clearly erroneous or contrary to law
for the Magistrate Judge to find that the Note has been paid in
full because Defendants returned the Note marked "PAID IN FULL,"
and because Defendants have made judicial admissions that the
Note has been paid and the Mortgage has been released.  Further,
it was not clearly erroneous or contrary to law to determine that
Defendants could pay off the Note with $1.8 million from the
Reserve Funds.

Additionally, the Court notes that Travelers may be
seeking to intervene in this action because of a concern for the
difficulty in collecting from Defendants in a separate future

suit.  However, "the impaired ability to collect judgments that may arise from future claims does not give rise to a right of intervention."  Alisal Water Corp., 370 F.3d at 920.  Thus, even if Travelers' concern is legitimate, there is an insufficient relationship to Plaintiff's claims to give rise to a significantly protectable interest such that intervention would be possible.

Accordingly, the Court affirms the Magistrate Judge's determination that Travelers does not have a significantly protectable interest in this action.  Coupled with the untimeliness of the Motion,[10/] it was not clearly erroneous or contrary to law for the Magistrate Judge to determine that Travelers was not entitled to intervene as of right in this matter.

## II.  Travelers Need Not Be Permitted to Intervene in this Matter.

Alternatively, Travelers requests that the Court, in its discretion, permit Travelers to intervene pursuant to Rule 24(b)(1).[11/]  "An applicant who seeks permissive intervention must

---

[10/] Because the Court affirms the Magistrate Judge's determination as to these two (of the four) considerations for intervention as of right, it is unnecessary to address the final two considerations that the Magistrate Judge also declined to consider.  See Arakaki, 324 F.3d at 1078 ("Each of these four requirements must be satisfied to support a right to intervene.").

[11/] Travelers does not argue that it should be permitted to intervene based on a conditional right of intervention provided by a federal statute.  Thus, Rule 24(b)(1)(A) is inapplicable

27

prove that it meets three threshold requirements:  (1) it shares
a common question of law or fact with the main action; (2) its
motion is timely; and (3) the court has an independent basis for
jurisdiction over the applicant's claims." <u>Donnelly</u>, 159 F.3d at
412.  Permissive intervention is discretionary, and as part of
that discretion, "the district court must consider whether
intervention will unduly delay the main action or will unfairly
prejudice the existing parties." <u>Id.</u>  The Magistrate Judge found
that permissive intervention was inappropriate both because the
Motion was untimely and because Travelers' claims do not share a
common question of law or fact.  Order at 11-12.  The Court
addresses the first two threshold requirements of permissive
intervention in finding that the Magistrate Judge's determination
was not clearly erroneous or contrary to law.

> **A.  Travelers' Claims do not Share a Common Question of Law
> or Fact with the Main Action.**

As to the first threshold requirement, "[t]he language
of the rule makes clear that if the would-be intervenor's claim
or defense contains no question of law or fact that is raised
also by the main action, [permissive intervention] must be
denied." <u>Kootenai Tribe of Idaho v. Veneman</u>, 313 F.3d 1094, 1111
(9th Cir. 2002).  The Magistrate Judge found that given the lack

_____

here and permissive intervention may only be appropriate if
Travelers "has a claim or defense that shares with the main
action a common question of law or fact."  Fed. R. Civ. P.
24(b)(1)(B).

of any dispute as to the release of the Mortgage and satisfaction
of the Note, "Travelers' claim is peripheral, at best, to the
questions of law and fact presented in this action."  Order at
12.  Travelers objects to this finding and argues that along with
its claim to the escrow funds, there are other common questions
of law and fact that the Magistrate Judge did not address.

        Travelers argues that its claim as to breach of
Defendants' obligation under the Trust Agreement somehow shares a
common question of law or fact with the instant action.  However,
Defendants' obligations to Travelers, NBD, Cudd & Company, or
anyone else under the Trust Agreement, are completely unrelated
to any of Plaintiff's claims.  In other words, the adjudication
of Plaintiff's claims does not impact the issue of whether or not
Defendants breached their contractual obligations or fiduciary
duties to Travelers under the Trust Agreement.

        Additionally, Travelers contends that the similarity in
the Defendants' defenses (i.e., Defendants' claims for servicing
fees based in quantum meruit) to Plaintiff's and Travelers'
claims warrants permissive intervention.  However, the correct
inquiry is whether Travelers, and not any other party, has a
claim or defense that shares a common question of law or fact.
See Fed. R. Civ. P. 24(b)(1)(B).  The fact that Defendants might
have a similar defense (or counterclaim) to claims asserted by

both Plaintiff and Travelers has no bearing on a determination of permissive intervention for Travelers.

Thus, Travelers arguments on appeal fail to show how its claims share a common question of law or fact with the instant action, where the escrow funds and any obligations under the Trust Agreement are not at issue.[12/]   Therefore, the Magistrate Judge's determination as to the first threshold requirement of permissive intervention was not clearly erroneous or contrary to law.

**B.  Travelers' Motion is Untimely.**

A determination of timeliness for permissive intervention "consider[s] precisely the same three factors - the stage of the proceedings, the prejudice to existing parties, and the length of and reason for the delay - that [the court] consider[s] in determining timeliness [for intervention as of right]." <u>League of United Am. Citizens</u>, 131 F.3d at 1308.  "In the context of permissive intervention, however, [the court]

---

[12/] Travelers also asserts that the Magistrate Judge applied an incorrect legal standard that only vaguely analyzed the "relationship" of the claims.  Notice of Appeal at 26.  However, the Magistrate Judge clearly applied the "common question of law or fact" standard in reaching his determination and thus that determination was not contrary to law.  <u>See</u> Order at 12 ("Travelers' claim is peripheral, at best, to the questions of law and fact presented in this action.").  Further, the Magistrate Judge also correctly analyzed the potential prejudice to the parties if intervention were permitted.  <u>See</u> Order at 12 ("To allow the injection of such a claim to the litigation at this juncture would unduly prejudice the current parties and disrupt the orderly administration of justice.").

analyze[s] the timeliness element more strictly than . . . with intervention as of right." Id.

In finding that permissive intervention was inappropriate, the Magistrate Judge based his decision, in part, on the untimeliness of the Motion.  Here, the Court has already determined that it was not clearly erroneous or contrary to law for the Magistrate Judge to determine that Travelers' Motion was untimely for purposes of intervention as of right.   Order at 11. Given this finding, and the stricter approach to timeliness for permissive intervention, Travelers' Motion was also untimely for purposes of permissive intervention.[13]

Therefore, it was not clearly erroneous or contrary to law for the Magistrate Judge to determine that the timeliness requirement for permissive intervention was not satisfied. Accordingly, the Court affirms the Magistrate Judge's denial of Travelers' request for permissive intervention and affirms the Magistrate Judge's Order as to both intervention as of right and as to permissive intervention.[14]

---

[13] The Court notes that this determination alone would be sufficient to deny permissive intervention.  League of United Am. Citizens, 131 F.3d at 1308 ("As with motions for intervention as of right, '[a] finding of untimeliness defeats a motion for permissive intervention.'" (quoting Washington, 86 F.3d at 1507)).

[14] Aside from the quantum meruit claims that Defendants are asserting for servicing fees, it appears that Defendants owe Plaintiff the remaining $2.7 million in the Reserve Funds (which might be adjusted based on Plaintiff's assertion that the

31

**CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the Magistrate Judge's Order Denying Travelers' Motion to Intervene, both as to intervention as of right, and as to permissive intervention.  The Court agrees with the Magistrate Judge that Travelers may still pursue its claims in an independent action against Defendants.  Further the Court notes that this Order does not address the merits of any claim that Travelers may have against Defendants.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, September 8, 2009.



_____
Alan C. Kay
Sr. United States District Judge

Kukui Gardens Corporation v. Holco Capital Group, et al., Civ. No. 08-00049 ACK-KSC: Order Affirming The Magistrate Judge's Order Denying Applicant's Motion to Intervene.

---

prepayment amount is actually less than $1.8 million) and owe Travelers $1.8 million (being the final payment on the Note, as possibly adjusted).