IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KUKUI GARDENS CORPORATION, | ) | Civ. No. 08-00049 ACK-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HOLCO CAPITAL GROUP, INC., HC | ) | |
| MORTGAGE COMPANY, INC., and | ) | |
| KEVIN C. HORTON, individually, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

<u>ORDER (1) ADOPTING IN PART, AND REJECTING IN PART, THE MAGISTRATE
JUDGE'S FINDINGS AND RECOMMENDATION ON OCTOBER 23, 2009, AND (2)
ADOPTING, AS MODIFIED, THE MAGISTRATE JUDGE'S FINDINGS AND
RECOMMENDATION ON OCTOBER 27, 2009, REGARDING PLAINTIFF'S MOTION
FOR ORDER TO SHOW CAUSE</u>

<u>FACTUAL BACKGROUND</u>[1]

As the parties and the Court are familiar with the

facts and background of this case, the Court will only present

the basic factual background and those facts bearing relevance to

the instant objections.

Plaintiff Kukui Gardens Corporation ("Plaintiff" or

"KGC") is a Hawai'i non-profit corporation formed to provide

housing for low and moderate income families.  <u>See</u> Answer at ¶¶ 1

(Nos. 2, 14), 7 (No. 15).  In February 1969, in order to

_____

[1] The facts as recited in this Order are for the purpose of
disposing of Defendants' objections and are not to be construed
as findings of fact that the parties may rely on in future
proceedings in this case.

construct a low and moderate income multifamily apartment housing complex in Honolulu ("Kukui Gardens" or "Property"), Plaintiff obtained a $16 million loan from The Ford Foundation, evidenced by a secured note ("Note") that was endorsed and insured by the United States Department of Housing and Urban Development ("HUD"). Id. at ¶ 1 (Nos. 16, 19, 20). The Note was secured by a mortgage ("Mortgage") recorded in both the State of Hawai'i Bureau of Conveyances and the Land Court. Id. at ¶ 1 (No. 21).

As a requirement for obtaining the loan, Plaintiff became subject to a regulatory agreement ("Regulatory Agreement") with HUD that required Plaintiff to establish two accounts, a Replacement Reserve Fund and a Residual Receipts Fund , to be maintained by the mortgagee (collectively, "reserve funds"). Id. at ¶ 1 (No. 26). The Replacement Reserve Fund and the Residual Receipts Fund were required to be maintained for the Property by HUD and were governed by HUD regulations. Id. at ¶ 1; see also Department of Housing and Urban Development, Multifamily Asset Management and Project Servicing Handbook (4350.1) Chapter 4, Sections 4-1, 4-2 ("HUD Handbook").

In 1986, Defendant HC Mortgage Company ("HC Mortgage" or "HCMC"), formed by Defendant Kevin C. Horton ("Horton"), purchased the Mortgage through a HUD auction. Answer at ¶ 1 (No. 22). HCMC serviced the Note and Mortgage between 1986 and 1997. Id. at ¶ 9.

2

In 1992, Defendant Horton left HCMC, but five years later formed Holco Capital Group, Inc. ("Holco") and agreed to take assignment of all HCMC assets as of January 1, 1998.  Id. at ¶ 4.  One of the mortgages Holco received from HCMC was the Kukui Gardens Mortgage.  Id.  Since January 1, 1998, Holco has serviced the Note and Mortgage for Plaintiff, and during that time, Horton has been personally involved in servicing the Note and Mortgage for KGC.  Answer at ¶¶ 1 (No. 23), 4, 9.

In 2007, KGC entered into a purchase and sale agreement of the Property.  Compl. at ¶¶ 31, 34-37.  The Regulatory Agreement, however, required that the mortgagee obtain HUD's approval in order to prepay the Note and Mortgage.  Id.  On December 7, 2007, Holco obtained approval from HUD to allow prepayment of the Loan and to proceed with the sale of the Property.  Id. ¶ 37.  After Holco credited Plaintiff $1,800,000 to pay off the balance of the Mortgage, Defendants retained approximately $2,700,000 of the reserve funds.  See Answer ¶ 19; Deposition of Kevin Horton, Defs. Objections Ex. A at A-3. Defendants initially asserted that they were entitled to the balance of the funds because Holco had obtained approval for the prepayment of the Note and Mortgage and for having serviced the Mortgage.  See Holco's December 12, 2007 Letter, MSJ CSF Exhibit BTL-1.  Subsequently, in response to the motion for partial summary judgment, Defendants asserted that they always owned the

reserve funds.[2/]  Despite these conflicting positions, after the sale of the property Defendants used the funds "to pay off creditors [and] lenders."  Deposition of Kevin Horton, Defs. Objections Ex. A at A-3.  Specifically, after the sale of the Property was approved, Holco was in possession of $4,500,000 of KGC's reserve funds ($1,800,000 of which was credited towards the payment of the Mortgage).  Id. at A-4.  In January of 2008, Holco paid back a $1,450,000 loan from Libertyville Bank.  Id. at A-4. In February of 2008, Holco paid Wells Fargo $2,000,000 on an operating credit line.  Id. at A-5, A-6.  Additionally, Holco paid HSL Financial $1,100,000 on an operating credit line.  Id. at A-7.  Finally, sometime between May and July of 2008, Horton transferred around one million dollars into an account at Raymond James, which later depleted to $300,000 as a result of "the crash" in the economy.[3/]  In his deposition, Defendant Horton

---

[2/] The Court has previously held that Defendants are not the owners of the Replacement Reserve and Residual Receipts funds but that these funds were held in trust for Plaintiff, and upon prepayment of the Mortgage were required to be returned to Plaintiff.  See Order Issued on October 15, 2009, Granting Plaintiff's Motion for Partial Summary Judgment as to Count II of the First Amended Complaint as to Defendant Holco.

[3/] At Horton's deposition, he stated:

> Q.   (By Mr. Gall) How did the $300,000 end up at
>      Raymond James?
> A.   I put it there.
> Q.   (By Mr. Gall) Was it part of a larger amount
>      that was reduced or did you move the $300,000
>      over?
>                                      (continued...)

4

suggested that the $300,000 in the Raymond James account was all that was left of the reserve funds.[4]  Despite Horton's testimony, Defendants' Counsel appears to argue not that Holco only has $300,000 left, but that it has no money left.  Defs. Objections at 6 ("Mr. Horton repeatedly testified at his deposition that Holco no longer had in its possession the so-called reserve funds.").[5]

---

[3] (...continued)
>     A.   No, I probably - I think precrash my guess is that I moved maybe a million dollars over there.
>     Q.   Okay.  And at what time did you move it there?
>     A.   I want to say June or July of -- I would say June -- June, July of '08, somewhere in that area.  Perhaps earlier, perhaps May of '08.

Deposition of Kevin Horton, Defs. Objections Ex. A at A-20.

[4] In his deposition, Horton explained:

>     Q.   Okay, so other than the 1.45 million to Libertyville Bank, the two million to Wells Fargo, and the 1.1 to HSL Financial, can you identify any other uses that were made of the funds that you were holding at the time of closing?
>     A.   No.
>     Q.   Okay.  Are any of those funds still being held by Holco?
>     A.   Yes.
>     Q.   Okay.  And what - in what amount?
>     A.   $300,000.

Deposition of Kevin Horton, Defs. Objections Ex. A at A-17.

[5] Additionally, at the hearing on Plaintiff's Motion for Order to Show Cause, Mr. Kaiser, Defendants' counsel, argued:

                                        (continued...)

Defendant Horton, moreover, does not own many assets outside of Holco's assets, as his net worth is only slightly higher than Holco's net worth.[5/]  In addition, Defendant HC

---

[5/](...continued)

| Mr. Kaiser: | Okay.  Well -- well, my -- well, my position, Judge -- and -- and the argument would be the motion is directed only to HOLCO.  And -- and now the order was directed at all defendants, but the bottom line, Judge, is that there's no money. There's no money.  So -- |
| The Court: | Well -- |
| Mr. Kaiser: | -- I mean there's no money.  That's the bottom line.  I mean there's no money.  I mean that's the bottom line. |

Transcript of October 22, 2009 Hearing, Defs. Objections Mem. Ex. A at A-2.  Additionally, Defendants' Objections to Judge Chang's F&Rs states, "plaintiff knew from defendant Horton's deposition testimony that none of the defendants had $2.7 million to deposit into the court and that Holco had used the _entire_ reserve funds to pay its $3.1 million debt . . . ."  Defs. Objections at 10 (emphasis added).

[6/] At Mr. Horton's deposition he stated:

Q.   (By Mr. Gall) Okay.  So could you give me an estimate of your personal net worth?

A.   My personal net worth is whatever the personal net worth of Holco Capital Group is and any related holdings that I have, so my estimate of my personal net worth, real estate, notes receivable, receivable collectible, three quarters of a million dollars.

Deposition of Kevin Horton, Defs. Objections Ex. A at A-28, A-29.

6

Mortgage is no longer in operation because Holco took over all of the assets of HC Mortgage on January 1, 2008, and HC Mortgage was administratively dissolved by the Secretary of the State of Indiana on December 4, 2000.  Compl. ¶ 5.  In other words, although HC Mortgage is properly joined as a defendant because HC Mortgage serviced the Kukui Gardens Mortgage from 1986 to 1997, the only real remaining defendants in this case are Horton, who serviced the Mortgage while working at HC Mortgage and as President and CEO of Holco, and Holco, who took over the assets of HC Mortgage and serviced the Mortgage until the regulatory agreement terminated.

## PROCEDURAL BACKGROUND

On May 25, 2008, Plaintiff KGC filed in this Court a First Amended Complaint ("Complaint") against Holco Capital Group, Inc., HC Mortgage Company, Inc., and Kevin C. Horton individually (collectively, "Defendants").  The Complaint alleges a failure to meet the statutory requirements for release of mortgage, pursuant to Hawai'i Revised Statutes ("H.R.S.") § 506-8 ("Count I"), wrongful conversion of Plaintiff's property ("Count II"), fraud ("Count III"), breach of fiduciary duties ("Count IV"), violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. ("Count V"), malicious, wanton, and intentional actions ("Count VI"), and offset of monies due and owing ("Count VII").  See Compl. at ¶¶

7

68-112.

On June 29, 2009, Plaintiff filed a Motion for Partial Summary Judgment on Count II of the First Amended Complaint for conversion as Against Defendant Holco Capital Group ("MSJ"). Plaintiff's MSJ was accompanied by a memorandum in support of summary judgment ("MSJ Mem.") and a concise statement of facts ("MSJ CSF").

On September 21, 2009, Plaintiff filed a motion to Compel Deposit of $2,703,561.77 ("$2.7 million") into the Court Registry in order to protect the funds in dispute ("Motion to Deposit").  Plaintiff's Motion to Deposit was accompanied by a memorandum in support of the Motion to Deposit ("Motion to Deposit Mem.").  Plaintiff's Motion to Deposit states, "[t]he 'deposit' concerns the approximate $2.7 million in reserve sums held by Defendant Holco Capital Group, Inc. ("Holco") . . . ." Motion to Deposit at 2.  In addition, Plaintiff's Motion to Deposit requested "that the Court compel Holco to deposit the $2.7 million into Court for safekeeping pursuant to the authority in Federal Rules of Civil Procedure . . . Rule 64 and Hawaii Revised Statutes . . . Section 655-1." Id. at 3.

On September 24, 2009, Plaintiff filed an ex parte Motion to Shorten Time for hearing of the Motion to Deposit.  On September 25, Magistrate Judge Kevin S.C. Chang granted Plaintiff's Motion to Shorten Time for hearing of the Motion to

Deposit ("Order Granting Ex Parte Motion").  Judge Chang

scheduled the hearing for the Motion to Deposit for October 2,

2009, and required that Defendants' opposition be filed by noon

on September 30, 2009.  Order Granting Ex Parte Motion at 1-2.

Also on September 24, 2009, Defendants filed a Memorandum in

Opposition to Plaintiff's Motion for Partial Summary Judgment,

which included a concise statement of facts.

On September 30, 2009, Defendants filed a Memorandum in

Opposition to Plaintiff's Motion to Deposit ("Defendants Opp. to

Motion to Deposit").

On October 2, 2009, Plaintiff filed a Reply to

Defendants' Memorandum in Opposition to Plaintiff's Motion for

Partial Summary Judgment.

Also on October 2, 2009, Plaintiff filed a Reply to

Defendants' Memorandum in Opposition to Plaintiff's Motion to

Deposit.  On the same day, Judge Chang granted Plaintiff's Motion

to Deposit, and ordered that the $2.7 million remaining from the

reserve funds be deposited in court by the close of business on

October 7, 2009 ("Order Compelling Deposit").  Although

Plaintiff's Motion to Deposit appeared to be directed at Holco,

Judge Chang's Order Compelling Deposit framed Plaintiff's Motion

to Deposit as a "request[] that the Court compel Defendants to

deposit $2,703,561.77 . . . the remaining monies from the reserve

funds currently held by Defendant Holco, pending the outcome of

the instant litigation."  Order Compelling Deposit at 2-3.  Judge

Chang concluded by stating, "the Court HEREBY GRANTS the Motion

and orders the $2,703,561.77 remaining from the funds to be

deposited in court by the close of business on October 7, 2009."

Id. at 7.  The Order to Deposit into the Court Registry did not

specify whether Holco or all of the defendants were required to

make the deposit.  See id.

Defendants did not deposit the funds, or any portion

thereof, into the Court registry by close of business on October

7, 2009.  To date, Defendants have not made a deposit of $2.7

million or any portion thereof.  As a result, on October 12,

2009, Plaintiff filed a Motion for Order to Show Cause why

Defendants should not be held in contempt of court for failing to

deposit the sum of $2.7 million by the required date ("Pl.'s

Motion to Show Cause").  Plaintiff's Motion to Show Cause was

accompanied by a Memorandum in Support of the Motion ("Pl.'s

Motion to Show Cause Mem.").

On October 13, 2009, Judge Chang issued an Order

Requiring Attendance at a Settlement Conference ("Attendance

Order"), directing Defendant Kevin Horton to attend the further

settlement conference scheduled for October 22, 2009.  Defendant

Horton failed to appear at the further settlement conference.[7]

---

[7] As a result of not attending the settlement conference,
Judge Chang found Horton in contempt of court for violating the
(continued...)

In addition, Judge Chang set the hearing for the Motion to Show Cause for October 22, 2009, and required that any oppositions be filed by October 16, 2009.[8]

On October 15, 2009, the Court issued an Order granting Plaintiff's Motion for Partial Summary Judgment as to Count II of the First Amendment Complaint as Against Defendant Holco, and awarded judgment in the amount if $2,703,561.77.

On October 22, 2009, the date of the hearing scheduled for the Motion to Show Cause, Judge Chang received a fax from Mr. Horton notifying the Court that Defendant Holco filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Indiana.  As a result, the hearing on the Motion proceeded as to Defendant Horton and Defendant HC Mortgage, but did not proceed as to Holco.  Judge Chang invited supplemental briefing as to whether the Court could proceed against Holco given Holco's recent bankruptcy filing.  Transcript of October

---

[7]/(...continued)
Attendance Order.  <u>See</u> October 23rd F&R at 8-9.

[8]/ In Defendants' objection to Judge Chang's F&Rs, Defendants claim that, "[o]n Saturday, October 17, 2009, the undersigned received in the mail the magistrate's order granting plaintiff's ex-parte motion to shorten time to respond to said motion for an order to show cause, requiring defendants to respond to the motion by noon on Friday, October 16, 2009, and scheduling a hearing on the motion for October 22, 2009." Defs. Objections at 4.  The Court, however, notes that Plaintiff never filed an ex parte motion to shorten time to hear Plaintiff's Motion for Order to Show Cause (Plaintiff did file an ex parte Motion to Shorten Time for hearing of the Motion to Deposit on September 24, 2009, however).

22, 2009 Hearing, Defs. Objections Mem. Ex. A at A-2.

On October 23, 2009, Judge Chang issued a Findings and Recommendation to grant in part and deny in part Plaintiff's Motion for Order to Show Cause ("October 23rd F&R").[9/]  Judge Chang found that:

> It is undisputed that Defendants have disobeyed the Order by failing to deposit the $2.7 million by the close of business on October 7, 2009.  Mr. Horton also violated the Attendance Order by failing to appear at the October 22, 2009 further settlement conference.  Defendants contest the imposition of contempt, but they have failed to establish a present inability to comply with the Order, or establish any other defense for their disobedience.

October 23rd F&R at 8-9.[10/]  Accordingly, Judge Chang concluded "that monetary coercive and compensatory fines should be imposed against Mr. Horton and HCMC," and recommended "a coercive monetary fine in the amount of $500 per day until Mr. Horton and HCMC comply with the Order or demonstrate a present inability to

---

[9/] In the October 23rd F&R, Judge Chang noted that "Defendants did not file an Opposition to the [Order to Show Cause] Motion."  October 23rd F&R at 1.

[10/] Judge Chang further added "Defendants argue that there is no money to deposit into court, but they have not offered a single piece of evidence to support this bare, conclusory assertion."  October 23rd F&R at 9.  The Court observes that Defendant Horton, testifying as Holco's representative pursuant to Fed. R. Civ. P. 30(b)(6), indicated that all but one million dollars invested at Raymond James was used to pay off lenders and creditors.  Notably, without evidentiary support, Defendants now claim that all of the funds have been used to pay off lenders and creditors, even though $300,000 may remain in the Raymond James account.  See Defendants' Objections to Judge Chang's F&Rs at 10.

comply." Id. at 9-10. Judge Chang also found that "an award of attorneys' fees and costs is appropriate as a compensatory action." Id.[11/]

Also on October 23, 2009, Plaintiff filed a Supplemental Brief, as requested by Judge Chang, which argued that the Court could hold Holco in civil contempt even though Holco filed for bankruptcy ("Supp. Brief").

On October 27, 2009, Judge Chang issued a second Findings and Recommendation regarding Plaintiff's Motion for Order to Show Cause as to Defendant Holco Capital, recommending that Holco be held in civil contempt and fined $500 a day until it complies with the Court's Order Compelling Deposit ("October 27th F&R"). Specifically, Judge Chang, in reference to the bankruptcy stay, concluded:

> In order to uphold the dignity of the Court, the Court need not stay the contempt proceeding. Even in instances where a contempt judgment/fine is payable to the opposing party as a means of coercing a party to comply with a court order, it has been determined that contempt proceedings, intended to uphold the dignity of the Court, should not be stayed.

October 27th F&R at 5-6. In other words, Judge Chang reasoned

_____

[11/] Judge Chang further warned that "Defendants, particularly Mr. Horton, are advised that their continued violation of the Order may result in the imposition of further sanctions, including but not limited to, incarceration and/or dismissal of their defenses and counterclaim. This matter may be the subject of subsequent proceedings to determine whether Mr. Horton remained in contempt and whether further sanctions should be imposed." October 23rd F&R at 10.

that "Holco cannot be permitted to disobey Court orders then shield itself behind a bankruptcy action. The Court will therefore proceed against Holco under these limited circumstances." Id. at 6.

On November 3, 2009, Defendants timely submitted a Notice of Appeal and/or Objections to both Judge Chang's October 23rd and October 27th F&Rs ("Defendants' Objections to Judge Chang's F&Rs").[12/]

On November 18, 2009, Plaintiff filed an Opposition to Defendants Notice of Appeal and/or Objections to both Judge Chang's October 23rd and October 27th F&Rs ("Opposition").

## STANDARD OF REVIEW

A district court reviews de novo those portions of a magistrate judge's findings and recommendation to which an objection is made and may accept, reject, or modify, in whole or in part, the findings and recommendation made by the magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Rule 74.2 of the Local Rules of Practice of the United States District Court for the District of Hawaii ("Local Rules").[13/] The district

_____

[12/] Although Defendants used both the terms "appeal" and "objection" in their filing, Judge Chang issued Findings and Recommendations on October 23, 2009, and October 27, 2009, and therefore Defendants are objecting to the F&Rs, and the Court will review Judge Chang's findings de novo. See 28 U.S.C. § 636(b)(1).

[13/] Plaintiff appears to argue that Judge Chang's Findings &
(continued...)

14

court may receive further evidence or recommit the matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).  It may also consider the record developed before the magistrate judge.  Local Rule 74.2.  The district court must arrive at its own independent conclusions about those portions of the magistrate judge's report to which objections are made, but a de novo hearing is not required.  <u>United States v. Remsing</u>, 874 F.2d 614, 618 (9th Cir. 1989).  The Court finds that a hearing in this matter is neither necessary nor appropriate.  <u>See</u> Local Rule 7.2(d).

<u>**DISCUSSION**</u>

**I. October 23rd Findings and Recommendation**

Defendants argue that Judge Chang's October 23rd F&R was not appropriate as against Defendants Kevin Horton and HC Mortgage because they reasonably believed that the Order Compelling Deposit was directed only towards Holco.

"The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the

---

<sup>13/</sup>(...continued)
Recommendations are being appealed as a non-dispositive order even though Plaintiff repeatedly refers to them as Judge Chang's Findings and Recommendations.  <u>See</u> Opposition at 8-9.  To this end, Plaintiff's Opposition mistakenly sets forth the standard of review for an appeal of a magistrate judge's order.  <u>See</u> <u>id.</u>  In the case at bar, Judge Chang issued Findings and Recommendations, which are reviewed de novo upon a party's objection to the magistrate judge's findings.  <u>See</u> 28 U.S.C. § 636(b)(1).

evidence." <u>Dual-Deck Video Cassette Recorder Antitrust Litig. v. Motion Picture Ass'n of Am.</u>, 10 F.3d 693, 695 (9th Cir. 1993) (citing <u>Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.</u>, 689 F.2d 885 (9th Cir. 1982)).  The test for civil contempt is whether the alleged contemnor (1) violated a court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence.  <u>Id.</u>  A defendant should not be held in contempt if his action "'appears to be based on a good faith and reasonable interpretation of the [court's order].'"  <u>Id.</u>  In other words, "civil contempt is [only] appropriate when a party fails to comply with a specific and definite court order."  <u>Balla v. Idaho State Bd of Corr.</u>, 869 F.2d 461, 466 (9th Cir. 1989) (citations omitted).  The Ninth Circuit has cautioned that "[t]he judicial contempt power is a potent weapon.  When it is founded upon a decree too vague to be understood, it can be a deadly one."  <u>Reno Air Racing Ass'n v. McCord</u>, 452 F.3d 1126, 1132 (9th Cir. 2006) (citations omitted).

Furthermore, civil contempt is appropriate where the Court desires to induce a party to obey a previous Court order. <u>Falstaff v. Miller Brewing Co.</u>, 702 F.2d 770, 778 (9th Cir. 1983) (citations omitted) ("Civil contempt is characterized by the court's desire to compel obedience to a court order.").  Thus, "[a]bility to comply is the crucial inquiry, and 'a court should

weigh all evidence properly before it determines whether or not there is actually a present ability to obey.'" <u>United States v. Ayers</u>, 166 F.3d 991, 994 (9th Cir. 1999) (citing <u>United States v. Drollinger</u>, 80 F.3d 389 (9th Cir. 1996)).

In this case, Defendants Horton and HC Mortgage could reasonably and in good faith have believed that the Order Compelling Deposit was directed only towards Defendant Holco. Plaintiff's Motion to Deposit only referred to Holco as it requested "that the Court compel Holco to deposit the $2.7 million into Court for safekeeping pursuant to the authority in Federal Rules of Civil Procedure . . . Rule 64 and Hawaii Revised Statutes . . . Section 655-1." Motion to Deposit at 3.[14] Further, Judge Chang's Order Compelling Deposit did not clarify which Defendants were required to deposit the funds into the registry.[15]  Although Judge Chang referred to the Defendants

---

[14] Plaintiff notes that the Temporary Restraining Order ("TRO") issued by the Court on September 28, 2009, restrained all Defendants from taking an action to withdraw, transfer, or spend Holco assets.  Opposition at 2-3.  The Court observes, however, that the language of the TRO is irrelevant to the issue of whether Defendants' interpretation of the Order Compelling Deposit was reasonable.

[15] Although Plaintiff correctly argues that the Order Compelling Deposit does not specifically state that the order is limited only as to Holco, the Order Compelling Deposit does not clearly state that it applies to all Defendants either.  <u>See</u> Opposition at 11-12 (citing the transcript of the hearing on Plaintiff's Motion for Order to Show Cause).  In other words, the Order Compelling Deposit was ambiguous as to whether it applied to all Defendants or only to Holco.

collectively when framing Plaintiff's Motion to Deposit, Judge

Chang never specifically stated that all of the Defendants were

responsible for depositing the $2.7 million.  Order Compelling

Deposit at 2-3 (characterizing Plaintiff's motion as a "request[]

that the Court compel Defendants to deposit $2,703,561.77 . . .

the remaining monies from the reserve funds currently held by

Defendant Holco, pending the outcome of the instant

litigation").[16/]  Moreover, in the conclusion section of the Order

Compelling Deposit, Judge Chang specifically granted Plaintiff's

Motion to Deposit, which, as previously stated, referred only to

Holco.  Order Compelling Deposit at 7 ("[T]he Court HEREBY GRANTS

the Motion and orders the $2,703,561.77 remaining from the funds

to be deposited in court by the close of business on October 7,

2009." (emphasis added)).[17/]  Additionally, the Order Compelling

Deposit was contemporaneous with, and made reference to,

---

[16/] Judge Chang also referred to the Defendants collectively
at the hearing on the Motion to Deposit, but again, Judge Chang
did not specifically state that all of the Defendants were
responsible for the $2.7 million deposit.  See Opposition at 4.

[17/] Plaintiff's Opposition cites United States v. Ayres, 166
F.3d 991, 995 (9th Cir. 1999), for the proposition that in a
contempt proceeding a party cannot challenge the legal or factual
basis of the order alleged to have been violated.  Opposition 13-
14.  In this case, Defendants are not challenging the legal or
factual basis of the Order Compelling Deposit, but rather are
contending that it was reasonable to interpret the Order
Compelling Deposit as only applying to Holco.  Accordingly, the
Court does not view Defendants' objections as a collateral attack
on the Order Compelling Deposit; and Defendants have not waived
the right to assert that the Order Compelling Deposit is
ambiguous, as asserted by Plaintiff.

Plaintiff's Motion for Partial Summary Judgement, which was directed only against Holco.[18]  Although Judge Chang ordered "2,703,561.77 remaining from the funds to be deposited in court," it is unclear whether Judge Chang was referencing the $300,000 asserted to be left or the entire $2.7 million.[19]  The Court, therefore, finds that it was reasonable for Defendants to believe that Judge Chang's Order Compelling Deposit only required Defendant Holco to deposit the $2.7 million.[20]

---

[18] Judge Chang noted:

> At the hearing, Mr. Kaiser expressed his concern that this Motion is an attempt by Plaintiff to circumvent its motion for partial summary judgment currently set for hearing before Judge Kay on October 13, 2009.  He argued that FRCP 56 is the appropriate vehicle to determine ownership of the funds, not FRCP 64.  However, this Court is not determining ownership, but rather deciding that in order to preserve Plaintiff's and Defendants' alleged interests in the $2.7 million, it is both prudent and necessary to place said funds into court to prevent further depletion.  That way, the funds are maintained for whichever party ultimately prevails.

Order Compelling Deposit at 6.

[19] Specifically, it is unclear whether Defendant Horton's transfer of approximately $1 million to Raymond James included Horton's personal assets, or if the transfer was exclusively Holco assets.  See Deposition of Kevin Horton, Defs. Objections Ex. A at A-20-21.

[20] The Court notes that it has not yet addressed whether Defendant Horton may be held personally liable.  The Partial Summary Judgment was granted only against Holco, and the Court did not discuss whether Horton's personal assets may be reached. As for HC Mortgage, Defendant HC Mortgage no longer exists.

(continued...)

In conclusion, because Defendants could reasonably interpret Judge Chang's Order Compelling Deposit as only requiring Defendant Holco to deposit $2.7 million, and because Plaintiff's Motion to Deposit solely pertained to Holco, the Court finds that Plaintiff's Motion for Order to Show Cause should be denied as to Defendants Horton and HC Mortgage.[21/]  The Attendance Order requiring Defendant Horton to attend the settlement conference, however, was clearly directed at Horton and he violated that Order by not attending the settlement conference.  Accordingly, the Court rejects Judge Chang's October 23rd F&R recommending that Defendant Horton and HC Mortgage be held in contempt and sanctioned for failure to deposit $2.7

---

[20/](...continued)
Plaintiff's Complaint acknowledges that HC Mortgage was administratively dissolved by the Secretary of the State in Indiana on December 4, 2000.  Compl. ¶ 5.

[21/] Plaintiff argues that Defendants have not properly submitted evidence establishing an inability to comply with the Order Compelling Deposit.  Opposition at 10.  Plaintiff correctly observes that Defendants presented no evidence on October 2, 2009, at the initial hearing on the Motion to Deposit, suggesting that Defendants would be unable to comply with an order requiring that $2.7 million be deposited in the court registry.  Id. Defendant Horton's Deposition, however, which suggested that all but $300,000 of the reserve funds was used to pay off lenders and creditors, was taken on September 22, 2009.  Deposition of Kevin Horton, Defs. Objections Ex. A.  Regardless, the Court's decision that Defendants Horton and HC Mortgage could reasonably have interpreted the Order Compelling Deposit as applying only to Holco is independent of Defendants' ability to comply, and therefore the Court need not address, at this time, whether Defendant Horton and Defendant HC Mortgage have presented satisfactory evidence of an inability to comply with the Order Compelling Deposit.

million into the court registry, and adopts Judge Chang's
recommendation that Defendant Horton be held in contempt for
violating the Attendance Order.[22/]

## II. October 27th Findings and Recommendation

Defendants argue that Judge Chang's October 27th F&R
was improper because it violates the automatic stay Holco was
granted as a result of filing for bankruptcy.

When a company files for bankruptcy, other judicial
proceedings are automatically stayed.  11 U.S.C. §§ 362(a)-(b)
(statute governing automatic stays).  The automatic stay of §
362(a) lies unless one of the exceptions of § 362(b) is
applicable.  See 11 U.S.C. § 362(a).  Proceedings for civil
contempt are not specifically listed among these exceptions.  See
Atkins v. Martinez, 176 B.R. 998, 1006 (Bankr. D. Minn. 1994).
Indeed, several courts have held that civil contempt proceedings
are never excepted from the automatic stay of § 362(a).  See id.
at 1007 ("The process in which the . . . District Court issued a
bench warrant was one for an adjudication of *civil* contempt . . .
No such exception to the automatic stay, statutory or judicially-
created, lies for such a proceeding." (emphasis in original));

---

[22/] The Court declines to impose sanctions against Defendant
Horton at this time for failure to comply with the Attendance
Order as Plaintiff's Order to Show Cause was directed towards
Defendants' failure to deposit $2.7 million into the court
registry.  If Defendant Horton continues to violate attendance
orders, however, sanctions will be imposed.

see also In re Cherry, 78 B.R. 65, 70 (Bankr. E.D. Pa. 1987)
("Given our belief that the automatic stay is extremely powerful,
and allows few exceptions, it is easy to understand why we are
reluctant to accept the reasoning of those cases which hold, with
no apparent Code referrent [sic], that even civil, as opposed to
criminal, contempt powers of courts other than the bankruptcy
court are somehow exempt from the stay.").

          Nevertheless, the Ninth Circuit has judicially created
an exception to § 362(a) for civil contempt proceedings in
limited circumstances.  In Hooker, a defendant in a breach of
contract case pending in the district court was ordered to answer
interrogatories by December 6, 1974.  David v. Hooker, Ltd, 560
F.2d 412, 415 (9th Cir. 1982).  The defendant corporation filed
for bankruptcy on November 26, 1974, and after failing to answer
the interrogatories, sought a stay of the district court action
in light of Rule 401 of the Federal Rules of Bankruptcy
Procedure.  Id.[23/]  The district court acknowledged the stay, but
again ordered defendant Hooker to answer the interrogatories.
Id.  After failing to answer the interrogatories again, the
district court ordered the president of the defendant company to
pay plaintiff the sum of $2,000 for attorneys fees pursuant to

_____

          [23/] The automatic stay in Hooker arose from Bankruptcy Rule
401, rather than § 362.  However, the present statute and the
former rule are essentially the same.  See In re Dumas, 19 B.R.
676, 677 (9th Cir. B.A.P. 1982).

Fed. R. Civ. P. 37.  Id.  On appeal, in affirming the district

court's decision, the Ninth Circuit noted:

> The district court's order herein is not contrary
> to [the automatic stay] purpose as it does not
> involve a determination of the ultimate obligation
> of the bankrupt nor does it represent a ploy by a
> creditor to harass him.  The order requiring
> obedience by the corporate defendant and its
> managing agent with the prior court order to
> answer interrogatories and imposing a sanction on
> the managing agent for his prior failure to comply
> in no way affects the operation of the stay in the
> main proceeding.

Id. at 418.  Later cases have clarified Hooker and have held that

civil contempt proceedings may also be brought against the debtor

corporation, and not just against an officer of the debtor

corporation.  See In re Dumas, 19 B.R. at 678 ("For purposes of

this issue, the circuit court approved the propriety of the

sanction order as to both the bankrupt corporation and the non-

bankrupt officer.").

In determining whether a civil contempt proceeding is

excepted from the automatic stay, several courts have

distinguished between contempt proceedings intended to effectuate

collection of a judgment and those intended to uphold the dignity

of the court, finding that the automatic stay does not apply to

contempt proceedings where the main purpose is to punish a

contemnor and uphold the dignity of the court.  US Sprint Commc'n

Co. v. Bushcher, 89 B.R. 154, 155 (D. Kan. 1988) (noting that the

automatic stay did not prevent the court from sentencing the

debtor on a civil contempt citation after the debtor violated a preliminary injunction issued by the court); In re Rook, 102 B.R. 490, 494-95 (Bankr. E.D. Va. 1989) (holding that the automatic stay did not apply to a second contempt order which was issued solely to uphold the dignity of the circuit court's prior orders).  In other words, if the purpose of the contempt order is to uphold the dignity of the court, the civil contempt order may be excepted from the automatic stay of § 362(a).  See Stovall v. Stovall, 126 B.R. 814, 815 (Bankr. N.D. Ga. 1990).  "On the other hand, if the underlying purpose in continuing the contempt action is 'calculated to enforce a money judgment, pursue a 'collection motive,' or to harass a defendant,' the relief from the stay is not appropriate."  In re Lincoln, 264 B.R. 370, 374 (Bankr. E.D. P.A. 2001) (citations omitted); see also In re Bloom, 875 F.2d 224, 226 (9th Cir. 1989) (holding that actions taken with the purpose of securing assets protected by the stay or harassing the debtor, even if the actions are couched in terms of a motion for contempt findings, violate the statutory automatic stay provisions of 11 U.S.C. § 362(a)).  To determine whether a civil contempt order is intended to collect on a judgment or to uphold the dignity of a prior court order, the Court must examine the totality of the circumstances.  In re Lowery, 292 B.R. 645, 650 (Bankr. E.D. Mo. 2003).

     Whether imposing sanctions for violating the Order

Compelling Deposit would be intended to uphold the dignity of the court or to effectuate collection of the judgment is a close call.   Judge Chang observed that "the [Deposit] Order sought [only] to ensure the safekeeping of the $2.7 million that is the subject of the litigation."   Order Compelling Deposit at 7. Judge Chang explained:

> This Court is not determining ownership, but rather deciding that in order to preserve Plaintiff's and Defendants' alleged interests in the $2.7 million, it is both prudent and necessary to place said funds into court to prevent further depletion.   That way, the funds are maintained for whichever party ultimately prevails.

Id. at 6.   Although Judge Chang noted that the Order Compelling Deposit was intended only for safekeeping purposes, subsequent to the entry of the Order Compelling Deposit, Plaintiff prevailed in its Motion for Partial Summary Judgment against Holco in the amount of $2.7 million.   Judge Chang's sanctions against Holco for failure to deposit the $2.7 million into the court registry occurred after Defendant Holco was found liable for that exact amount, though at the time the Order Compelling Deposit was issued the Court had not determined ownership of the funds.   In the case at bar, however, whether imposing sanctions for violating the Order Compelling Deposit would be intended to uphold the dignity of the court or to effectuate the collection of a judgment is, for the reasons discussed below, immaterial.

In Defendants' objections, Defendants stated: "Though

25

the court recently dismissed the bankruptcy case for technical
reasons, it was in effect when the magistrate conducted its
hearing on October 22, 2009." Defs. Objections at 11 (filed on
November 3, 2009). Upon reviewing the docket of the bankruptcy
court in the Northern District of Indiana, the Court observes
that Holco's bankruptcy was not dismissed until November 20,
2009. In re Holco Capital Group, November 20, 2009 Order, Case
No, 09-35017 (Bankr. N.D. Ind. 2009) (dismissing case for failure
to obtain counsel).[24/] As of the date of this Order, Holco has
not refiled for bankruptcy. Although Defendants' counsel stated
that Holco intends on refiling for bankruptcy, the Court need not
rely on this representation.[25/]

      While Holco was in bankruptcy between October 22, 2009,

---

[24/] On October 28, 2009, Bankruptcy Judge Henry C. Dees, Jr.
("Judge Dees") ordered: "In accordance with the local rule set
forth above, the court directs Holco Capital Group Inc. to obtain
counsel to represent the corporation in this case on or before
November 17, 2009 . . . In the event no counsel enters an
appearance on the debtor's behalf by the deadline, the court will
dismiss this case . . . ." In re Holco Capital Group, October
28, 2009 Order, Case No, 09-35017 (Bankr. N.D. Ind. 2009). Holco
did not obtain counsel by the required deadline and therefore on
November 20, 2009, Judge Dees ordered the bankruptcy case
dismissed, without prejudice. In re Holco Capital Group,
November 20, 2009 Order, Case No, 09-35017 (Bankr. N.D. Ind.
2009).

[25/] Defendant Holco could have easily avoided dismissal of
the initial bankruptcy filing by obtaining counsel by November
17, 2009. See In re Holco Capital Group, October 28, 2009 Order,
Case No, 09-35017 (Bankr. N.D. Ind. 2009). Holco's failure to
obtain counsel for the initial bankruptcy filing suggests that
Defendant Holco does not intend to file for bankruptcy again.

and November 20, 2009, therefore, if the purpose for imposing
sanctions against Holco for failure to comply with the Order
Compelling Deposit would have been to effectuate collection of
the judgment, sanctions would have been precluded.[26/]  On the
other hand, sanctions would not have been precluded if the
purpose for imposing said sanctions was to the uphold the dignity
of the Court.  Notably, although the Court would not have been
precluded by the automatic stay in that instance, sanctions would
have been inappropriate for violating the Order Compelling
Deposit of $2.7 million because Holco would have been unable to
comply with the underlying order given its bankrupt status.[27/]

         Presently, the automatic stay is inapplicable to the
Court's decision because Holco's bankruptcy case has been
dismissed.  As Judge Chang only issued a Findings and
Recommendation as to whether sanctions should be imposed against
Holco, the Court has not yet imposed sanctions against Holco.  To

---

[26/] Judge Chang's hearing on whether sanctions should be
imposed was proper because the Ninth Circuit, in Hooker, observed
that the Court has the ability to hold a hearing as to whether it
can sanction a bankrupt defendant despite the automatic stay.
See Hooker, 560 F.2d at 415 (hearing on order to show cause was
permissible after defendant had filed for bankruptcy).

[27/] While in bankruptcy, Defendant Holco could not have
complied with the Order Compelling Deposit because the disposing
of Holco's funds, if any, was barred by the bankruptcy filing.
See 11 U.S.C. § 362 (prohibiting any creditor collection
activities after the filing of bankruptcy during the automatic
stay period).  In other words, Defendant Holco was statutorily
mandated not to comply with the Order Compelling Deposit while
the automatic stay was in effect.

this end, even if the purpose of the Order Compelling Deposit was

to effectuate collection of a judgment, Judge Chang's Oct. 27th

F&R alone did not violate the automatic stay because no sanctions

were imposed at that point in time and the hearing on the Motion

for Order to Show Cause was permissible.  See Hooker 560 F.2d at

415.[28/]  Further, Holco is no longer in bankruptcy, and it has not

demonstrated an inability to comply with the Order Compelling

Deposit.  Given that Holco no longer is in bankruptcy, civil

sanctions are appropriate because Defendant Holco has clearly

violated the Order Compelling Deposit and Holco has not presented

sufficient evidence justifying noncompliance.[29/]

        Accordingly, in light of the recent dismissal of

Holco's bankruptcy case, the Court agrees with Judge Chang's

October 27th recommendation of a $500 daily fine along with

attorneys' fees and costs incurred in bringing the Motion for

Order to Show Cause as to Holco.  The sanction shall begin as of

the date of this Order and shall continue until Holco complies

with the Order Compelling Deposit, or presents satisfactory

---

[28/] No further hearing is required in this case because Judge
Chang's Findings and Recommendations are not effective until
adopted by this Order.

[29/] Although Defendant Holco may no longer have control of
all of the reserve funds, Holco has not provided justification as
to why it has not complied with the Order Compelling Deposit to
the extent possible.  Specifically, in this case, it appears
Holco still may have access to $300,000 of Plaintiff's reserve
funds, which should be deposited into the court registry.  See
Deposition of Kevin Horton, Defs. Objections Ex. A at A-17.

evidence of its inability to comply with the Order Compelling Deposit.

## CONCLUSION

In conclusion, the Court finds it was reasonable for Defendants Horton and HC Mortgage to believe that the Order to Deposit $2.7 million into the Court Registry was directed only towards Holco, and that Plaintiff's motion only sought deposit by Holco.  Therefore, both the $500 daily fine and attorneys fees sanctions are inappropriate as against Defendants Horton and HC Mortgage.  The Court, however, finds that Defendant Horton is in contempt for violating the Attendance Order (sanctions for violating the Attendance Order were not addressed by Judge Chang as the Motion for Order to Show Cause only applied to the Order Compelling Deposit).  Further, the Court finds that Defendant Holco should be sanctioned because the bankruptcy filing has been dismissed, and because Holco has violated a clear and direct order requiring deposit of $2.7 million into the court registry. A sanction of $500 per day, from the date of this Order, and attorneys fees incurred in bringing the Motion for Order to Show Cause is appropriate as against Defendant Holco.

For the foregoing reasons, the Court ADOPTS IN PART, and REJECTS IN PART, Judge Chang's Findings and Recommendation on October 23, 2009, and ADOPTS, as modified, Judge Chang's Findings and Recommendation on October 27, 2009.  Further, the Court

GRANTS in part, and DENIES in part, Plaintiff's Motion for Order to Show Cause filed on October 12, 2009, as the Court has concluded that contempt sanctions are not presently appropriate as against Horton or HC Mortgage, but are appropriate as against Holco.

        IT IS SO ORDERED.

        DATED:  Honolulu, Hawai'i, November 23, 2009.



_____
Alan C. Kay
Sr. United States District Judge

Kukui Gardens Corporation v. Holco Capital Group, et al., Civ. No. 08-00049 ACK-KSC: Order (1) Adopting in Part, and Rejecting in Part, the Magistrate Judge's Findings and Recommendation on October 23, 2009, and (2) Adopting, as modified, the Magistrate Judge's Findings and Recommendation on October 27, 2009, Regarding Plaintiff's Motion for Order to Show Cause